IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| C.J.S. AND C.S. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BOARD OF DIRECTORS OF CITY | : | |
| TRUSTS | : | NO. 11-1471 |

## MEMORANDUM

**Padova, J.**                                                                                    **August 17, 2011**

C.J.S., a minor who was at all relevant times a boarding elementary school student at Girard

College, brings this action pursuant to 42 U.S.C. § 1983 against the Board of Directors of City Trusts

(the "Board") as trustee for Girard College, alleging that Residential Assistants ("RAs") employed

by Girard College, who were poorly trained in the recognition, investigation, and handling of

impermissible sexual activity, caused C.J.S. to be victimized in a series of incidents in which older

students raped and sodomized him, forced him to allow them to perform oral sex on him, and forced

him to perform oral sex on them, in violation of his Fourteenth Amendment rights (Count One).

C.S., who is C.J.S.'s mother, asserts a state law claim for infliction of emotional distress (Count

Two).   The Board moves to dismiss Count One pursuant to Federal Rule of Civil Procedure

12(b)(6),[1] and moves to dismiss Count Two pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6).   For the reasons that follow, we grant the Motion in part and deny it in part.

---

[1]In its Motion, the Board also moved to dismiss Count One pursuant to Rule 12(b)(1), on the ground that the Board is immune from suit in federal court under the Eleventh Amendment to the United States Constitution.   At a July 19, 2011 Hearing on the Board's Motion, the Board "conced[ed] that the Eleventh Amendment immunity does not apply in this case" and withdrew its Motion insofar as it rested on the Eleventh Amendment.   (See 07/19/11 Hr'g Tr. at 3.)   Accordingly, we conclude that the Board has withdrawn its Motion to Dismiss insofar as it seeks dismissal of Count One pursuant to Rule 12(b)(1).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Complaint alleges the following facts.  Girard College is an educational institution that was established by bequest from Stephen Girard in trust to the City of Philadelphia.  (Compl. ¶ 5.) Its primary mission is to provide for the full nurturing and development needs of orphaned children in the Philadelphia area from grades one through twelve.  (Id. ¶ 7.)  Girard College provides its boarding students with an education, food, clothing, healthcare, and a caring place to live.  (Id.)  The Board was established by a Pennsylvania statute to administer estates bequeathed to the City of Philadelphia, including Girard College.  (Id. ¶ 5.)  Pursuant to the statute, the Board and Girard College are one legal entity.[2]  (Id. ¶ 6.)

C.J.S. is a minor who now resides with his mother in Philadelphia.  (Id. ¶ 3.)  From 2006 to 2010, he was a boarding student in elementary school at Girard College.  (Id. ¶¶ 3, 17, 39.)  Some time after C.J.S.'s 2006 enrollment in Girard College as a first grade boarding student, older students began bullying and intimidating C.J.S. into impermissible sexual activity.  (Id. ¶¶ 17-18.)  C.J.S. was most frequently bullied and intimidated by two other students, T.J. and A.R.  (Id. ¶ 19.)

Girard College maintains a policy of assigning each of its students a "homework buddy." (Id. ¶¶ 20-21.)  Pursuant to that policy, when a student tells a Residential Assistant ("RA") that he needs help with his homework, the RA sends the student to the homework buddy for an unsupervised and unmonitored session.  (Id. ¶¶ 20-21, 23-24.)  C.J.S.'s homework buddy was T.J.  (Id. ¶ 20.) When C.J.S. needed help with his homework, his RA sent him to T.J., who agreed to help C.J.S. with his homework only if C.J.S. sat on his lap.  (Id. ¶ 22.)  As a proximate result of the homework

---

[2]Indeed, "to sue Girard College, you must sue the Board of Directors as its trustee."  In re Sch. Asbestos Litig., 56 F.3d 515, 521 (3d Cir. 1995); see also id. ("The Board has the authority to sue and may be sued pursuant to the state statute which created the Board.").

buddy policy, and of "Girard College's failure to train or educate RA's in the proper methods of supervising adolescent children and recognizing, reporting and investigating suspected rape, sodomy or other impermissible sexual activity among the adolescent student body, [C.J.S.] . . . was often left unsupervised and exposed to sexual bullying by [T.J.] . . . ." (Id. ¶ 25.)

In October 2009, an RA discovered C.J.S., T.J., and A.R. in a bathroom, and C.J.S.'s pants were down. (Id. ¶ 28.) T.J. and A.R. were bullying C.J.S. into allowing them to perform oral sex on him and to sodomize him. (Id. ¶ 27.) When the RA entered the bathroom, C.J.S. was "about to be sodomized." (Id. ¶ 30.) The RA asked C.J.S. why his pants were down, and C.J.S. falsely said that he had been masturbating. (Id. ¶ 29.) The RA "did not recognize the incident as one involving impermissible sexual activity, and made no effort to further investigate it, because Girard College had not trained or educated him in the proper methods of supervising adolescent children and recognizing, reporting and investigated suspected rape, sodomy or other impermissible sexual activity among the adolescent student body." (Id. ¶ 32.) Because the RA did not investigate the bullying and impermissible sexual activity, those activities "continued and escalated." (Id. ¶ 33.) Consequently, throughout the remainder of 2009 and into 2010, C.J.S. was often left unsupervised with T.J. and A.R., who bullied him into allowing them to perform oral sex on him or to sodomize him several times a week. (Id. ¶ 34.) One way in which they bullied C.J.S. involved threatening to tell other students that it was C.J.S. who initiated the sexual activity. (Id. ¶ 35.)

On one occasion, an RA approached C.J.S. and told him that he had heard that C.J.S. had been in the shower unsupervised with T.J. (Id. ¶ 36.) The RA did not question C.J.S. about the incident in any way, did not investigate it, and did not report it. (Id. ¶ 37.) Rather, he told C.J.S. that if he heard about a similar incident happening again, both C.J.S. and T.J. would be sent to bed early.

3

(Id.)  "[C.J.S.] . . . would not have remained at the mercy of the sexual bullies . . . and would not have been sexually bullied by the other two boys, if the RA had been properly trained and educated in the proper methods of supervising adolescent children and recognizing, reporting and investigating suspected rape, sodomy or other impermissible sexual activity among the adolescent student body."  (Id. ¶ 38.)

In February, 2010, C.J.S. reported the sexual bullying and the bathroom incident to his mother, C.S.  (Id. ¶ 39.)  She became psychologically and physically ill.  (Id. ¶ 40.)  She brought the matter to Girard College's attention and removed C.J.S. from the school.  (Id. ¶ 39.)

As a result of the foregoing, C.J.S. has "suffered irreparable psychological damage, mental anguish and pain, humiliation, and physical pain."  (Id. ¶¶ 42-43.)  He "will be forced to undergo psychological treatment and therapy," possibly for the rest of his life.  (Id. ¶ 44.)  C.S. has suffered "grief, physical pain, headaches, anguish, anxiety, loss of sleep, and depression, for all of which she was treated by, and continues to be treated by, a psychologist."  (Id. ¶ 45.)

C.J.S. asserts a claim against the Board pursuant to 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment rights (Count One).  C.S. asserts a state law claim against the Board for infliction of emotional distress (Count Two).  Plaintiffs seek compensatory damages and attorney's fees.

## II.    LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Legal conclusions, however, receive

no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986), cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may challenge the court's jurisdiction on either "factual" or "facial" grounds. Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002).  Where, as here, the defendant argues that the complaint on its face fails to establish the court's jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted).  Ordinarily, the plaintiff bears the burden of showing that jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  However, where the defendant's challenge to subject matter jurisdiction is based on sovereign immunity, "the party asserting the immunity bears the burden" of showing that immunity applies. M&M Stone Co. v. Pennsylvania Dep't of Envtl. Prot., Civ. A. No. 07-4784, 2008 WL 4467176, at *13 (E.D. Pa. Sept. 29, 2008) (citation omitted); see also Woodham v. Dubas, 256 F. App'x 571, 575 (3d Cir. 2007) (placing burden on defendant where defendant asserted state law sovereign immunity).

5

### III.    DISCUSSION

The Board moves to dismiss Count One pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that C.J.S. has not stated a claim upon which relief may be granted.  The Board moves to dismiss Count Two pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that the Board is immune from suit for infliction of emotional distress under state law, and pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that C.S. has not stated a claim upon which relief may be granted.

### A.    Count One

In Count One, C.J.S. asserts that the Board violated his Fourteenth Amendment due process right to bodily integrity, in violation of 42 U.S.C. § 1983.  To support its contention that he has not stated a claim upon which relief may be granted in Count One, the Board relies on the general rule that "a State's failure to protect an individual against private violence simply does not constitute a violation" of the Due Process clause of the Fourteenth Amendment.  See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).  Plaintiffs argue that the Complaint states a plausible claim based on two exceptions to that rule, the "special relationship" theory and the "state-created danger" theory.  See Kneipp v. Tedder, 95 F.3d 1199, 1204-05 (3d Cir. 1996).

The "special relationship" theory essentially provides that  "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney, 489 U.S. at 199-200 (citation omitted); see also Leonard v. Owen J. Roberts Sch. Dist., Civ. A. No. 08-2016, 2009 WL 603160, at *5 (E.D. Pa. Mar. 5, 2009) (stating that, by restraining an individual's freedom to act to protect himself, the State "form[s] a special relationship that imposes 'affirmative

duties of care and protection on the state'" (quoting <u>Kneipp</u>, 95 F.3d at 1204)).  However, "a custodial relationship created merely by an individual's voluntary submission to state custody is not a deprivation of liberty sufficient to trigger" the state's obligation to take responsibility for his or her safety and well-being.  <u>Torisky v. Schweiker</u>, 446 F.3d 438, 446 (3d Cir. 2006) (quotation marks omitted).  Here, the Complaint does not allege that the state took C.J.S. into its custody involuntarily.  To the contrary, it indicates that C.S. was free to remove C.J.S. from Girard College at will.  (<u>See</u> Compl. ¶ 39.)  Moreover, Plaintiffs conceded at a July 19, 2011 Hearing on the Board's Motion that "there is no special relationship."  (<u>See</u> 07/19/11 Hr'g Tr. at 20.)  Accordingly, we conclude that the Complaint does not state a § 1983 claim upon which relief may be granted based on a "special relationship" theory.

  In order to state a claim pursuant to § 1983 for a violation of the Fourteenth Amendment based on a "state-created danger" theory, a plaintiff must plausibly allege the following elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

<u>Bright v. Westmoreland Cnty.</u>, 443 F.3d 276, 281 (3d Cir. 2006) (footnotes, internal quotations and citations omitted).

  With respect to the first element, "'[a] harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual . . . such that the actor

is on notice that his or her act or failure to act significantly enhances that risk of harm.'" <u>Watson v.</u> <u>Methacton Sch. Dist.</u>, 513 F. Supp. 2d 360, 373 (E.D. Pa. 2007) (quoting <u>Gremo v. Karlin</u>, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005)). Here, the Complaint alleges that on at least two occasions, RAs had actual knowledge that C.J.S., a mere elementary school student, was involved in impermissible sexual activity with older boys, that on both occasions the RAs declined to formally investigate or report the incidents, and that on one occasion an RA threatened C.J.S. with disciplinary action if word of the sexual activity spread further. The Complaint further alleges that the RA's handling of the bathroom incident emboldened T.J. and A.R. to continue and escalate their conduct, and that the subsequent threat of disciplinary action delayed the reports that ultimately brought the sexual activity to an end. These allegations, taken as true, suffice to plausibly allege that the RAs could have foreseen further inappropriate sexual activity involving C.J.S. at the time they acted, and that the continuation and escalation of such activity was a fairly direct result of their actions.

With respect to the second element, "the 'exact degree of wrongfulness necessary to reach the conscience-shocking level depends upon the circumstances of a particular case.'" <u>Kaucher v.</u> <u>Cnty. of Bucks</u>, 455 F.3d 418, 426 (3d Cir. 2006) (quoting <u>Miller v. City of Philadelphia</u>, 174 F.3d 368, 375 (3d Cir. 1999)). "[I]n cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." <u>Sanford v. Stiles</u>, 456 F.3d 298, 309 (3d Cir. 2006). Again, the Complaint alleges that on at least two occasions, RAs had actual knowledge that C.J.S. was involved in impermissible sexual activity with older boys, and not only decided to largely ignore the activity, but threatened C.J.S. with discipline if word of the activity spread further. These factual allegations suffice, at this stage, to plausibly allege deliberate indifference to C.J.S.'s Fourteenth Amendment due process right to bodily integrity.

With respect to the third element, C.J.S.'s status as a elementary boarding student certainly suffices to plausibly allege that C.J.S. was "a foreseeable victim of the [RAs'] acts, or a member of a discrete class of persons subjected to the potential harm brought about by the [RAs'] actions, as opposed to a member of the public in general." Bright, 443 F.3d at 281.

With respect to the fourth element, the Complaint plausibly alleges that the RAs took the following actions, which placed C.J.S. in a greater danger of further sexual assault than if the RAs had not acted at all:  (1) deciding not to investigate or report the instances of sexual activity involving C.J.S.; (2) departing from the bathroom without questioning or punishing the older boys found with C.J.S.; and (3) threatening C.J.S. with disciplinary action if word of the sexual activity spread further.

We conclude that the Complaint states a plausible § 1983 claim under a "state-created danger" theory.  Therefore, we deny the Motion insofar as it seeks dismissal of Count One pursuant to Federal Rule of Civil Procedure 12(b)(6), and we conclude that C.J.S. may proceed on Count One on a "state-created danger" theory only.

B.     Count Two

In Count Two, C.S. asserts a Pennsylvania law claim for infliction of emotional distress.  The Board moves to dismiss Count Two pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that it is immune from suit under Pennsylvania law and that we therefore lack subject matter jurisdiction.[3]  The Board also moves, in the alternative, to dismiss Count Two pursuant to Federal

---

[3]We are bound to apply state law to state law claims heard under pendent jurisdiction.  See Hamilton v. Roth, 624 F.2d 1204, 1211-12 (3d Cir. 1980) (citations omitted).  Thus, a federal court may not exercise pendent jurisdiction over a state law claim if the defendant would be protected by sovereign immunity in state court.  See Merit v. SEPTA, 276 F. Supp. 2d 382, 387 (E.D. Pa. 2003).

Rule of Civil Procedure 12(b)(6) on the ground that C.S. has not stated a claim upon which relief may be granted.

    1.    <u>Rule 12(b)(1)</u>

In order to determine whether we have subject matter jurisdiction over C.S.'s claim, we must first decide if the Board, in its capacity as trustee for Girard College, is a state or municipal entity under Pennsylvania law for purposes of immunity.  The Board contends that it is a state entity and, consequently, that it is immune from suit on Count Two pursuant to Title 1, Pennsylvania Consolidated Statutes, Section 2310, which provides that "the Commonwealth . . . shall continue to enjoy sovereign immunity . . . and remain immune from suit."  The Board also contends, in the alternative, that it is a municipal entity immune from liability on Count Two pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541.

    a.    <u>Sovereign Immunity</u>

The Board points to the fact that it was created by a Pennsylvania statute to argue that it is immune from suit on Count Two as a Commonwealth agency.  <u>See</u> <u>Bowman v. Reilly</u>, Civ. A. No. 09-1322, 2009 WL 136021, at *2 (E.D. Pa. June 10, 2009) ("The immunity guaranteed by § 2310 extends to all 'Commonwealth parties,' which includes 'Commonwealth agenc[ies].'" (alteration in original) (quoting 42 Pa. Cons. Stat. § 8501)).  The Pennsylvania Supreme Court has never directly addressed the question of whether the Board is a Commonwealth agency protected by sovereign immunity.  Accordingly, "we must 'predict how the [Pennsylvania] Supreme Court would rule if presented with this case.'"  <u>Holmes v. Kimco Realty Corp.</u>, 598 F.3d 115, 118 (3d Cir. 2010) (quoting <u>Repola v. Morbark Indus., Inc.</u>, 934 F.2d 483, 489 (3d Cir. 1991)).  In making that prediction, "'we may give serious consideration to the opinion of an intermediate appellate court.'"

Id. (quoting Aetna Cas. & Sur. Co. v. Farrell, 855 F.2d 146, 148 (3d Cir. 1988)).

In Burcik v. Caplen, 805 A.2d 21 (Pa. Commw. Ct. 2002), vacated on other grounds, 847 A.2d 56 (Pa. 2004), the Pennsylvania Commonwealth Court noted that "not all boards created by State statute are independent Commonwealth agencies," id. at 24 (citation omitted), and after considering the text of the statute creating the Board, the Board's function, and other applicable statutory provisions, the Commonwealth Court determined that the Board is not a Commonwealth agency entitled to sovereign immunity pursuant to 1 Pa. Cons. Stat. § 2310.  Id. at 23-25 & n.3; see also City of Philadelphia v. Cumberland Cnty. Bd. of Assessment Appeals, 18 A.3d 421, 427 (Pa. Commw. Ct. 2011) ("Cumberland Bd.") (noting that the Board is not a Commonwealth agency).[4] For the reasons set out in the Commonwealth Court's opinion in Burcik, we predict that the Pennsylvania Supreme Court would also hold that the Board is not protected by sovereign immunity if presented with this case.  Accordingly, we conclude that the Board is not protected by sovereign immunity pursuant to 1 Pa. Cons. Stat. § 2310, and we deny the Board's Motion insofar as it seeks dismissal of Count Two pursuant to Rule 12(b)(1) on the basis of sovereign immunity.

b.      Political Subdivision Tort Immunity

The Board also argues that, if the Court determines that it is not a Commonwealth agency entitled to sovereign immunity, then it must be a local agency immune from liability on Count Two pursuant to the PSTCA, which provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee

---

[4]The Board relies on Moore v. Bd. of Dirs. of City Trusts, 809 A.2d 420 (Pa. Commw. Ct. 2001) for the proposition that it is a Commonwealth agency protected by sovereign immunity. However, the Moore court did not analyze this issue.  Rather, the plaintiff in Moore conceded that the Board was protected by sovereign immunity.  Id. at 422.  Consequently, Moore does not inform our analysis of how the Pennsylvania Supreme Court would decide this issue.

thereof or any other person." 42 Pa. Cons. Stat. § 8541.  The Pennsylvania Supreme Court has not squarely addressed the question of whether the Board is a municipal entity protected by the PSTCA, and therefore we must predict how it would rule if presented with this case.  Holmes, 598 F.3d at 118 (citation omitted).  In making that prediction, we consider the relevant decisions of the Pennsylvania Commonwealth Court.  See id.

By its terms, the PSTCA protects only "local agenc[ies]."  See 42 Pa. Cons. Stat. §§ 8541, 8542.  The Pennsylvania Supreme Court has explained that whether a particular entity is a "local agency" within the meaning of the PSTCA turns on whether it satisfies the definition of "local authority" contained in the Statutory Construction Act, 1 Pa. Cons. Stat. § 1991.  Sphere Drake Ins. Co. v. Philadelphia Gas Works, 782 A.2d 510, 513 (Pa. 2001).  The Pennsylvania Commonwealth Court recently the addressed the issue of whether the Board is a local authority within the meaning of the Statutory Construction Act in a case involving immunity from taxation.  See Cumberland Bd., 18 A.3d 421.  In Cumberland Bd., the Commonwealth Court squarely held that the Board is not a "local authority" within the meaning of the Statutory Construction Act.  Id. at 427.  The Commonwealth Court explained its reasoning as follows:

> "Local Authority" is defined as "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." 1 [Pa. Cons. Stat.] § 1991. While this definition only applies to statutes enacted since 1975, it is informative in that it conforms with the concept that local agencies are creations of local governments and ultimately subject to their oversight, laws, officials and, ultimately, to the electorate. The Board does not oversee an entity created by the City of Philadelphia but rather a trust created by Stephan Girard; and it is not answerable to public officials or ultimately to the electorate, but rather has a fiduciary duty to carry out Girard's wishes, to the extent allowed by law, and not the public's. Furthermore, although the Board is tasked with administering charitable trusts in which the City is named as

> trustee, Section 1 of the Act, 53 P.S. § 16365, it operates independently of the City except for its annual report to the City, Section 4 of the Act. Additionally, while Section 6 of the Act, 53 P.S. § 16370, makes the members of the Board agents of the City, in administering the Trust, they receive no compensation from the City.

Id.  Thus, the Commonwealth Court has determined that the Board is not a local authority within the meaning of the Statutory Construction Act.  Accordingly, we conclude that the Board is not a local agency within the protection of the PSTCA, see Sphere Drake, 782 A.2d at 513-14, and we predict that the Pennsylvania Supreme Court would so hold if presented with this case.  Therefore, we conclude that the Board is not immune from suit on Count Two pursuant to the PSTCA.

In sum, we conclude that the Board is not protected by sovereign immunity or by the PSTCA.[5]  Accordingly, we deny the Board's Motion to Dismiss Count Two pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 2.    Rule 12(b)(6)

The Board also moves to dismiss Count Two pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that C.S. has not stated a claim upon which relief may be granted.  The Complaint does not specify whether it asserts a claim for intentional or negligent infliction of emotional distress.  In their Response to the Board's Motion to Dismiss, Plaintiffs argue that the Complaint states plausible claims for both intentional and negligent infliction of emotional distress.

### a.    Intentional Infliction of Emotional Distress

"Although the Supreme Court of Pennsylvania has not officially recognized the tort of

---

[5]Although the Board is neither a Commonwealth agency entitled to sovereign immunity nor a local agency entitled to immunity under the PSTCA, the Board is nevertheless a state actor for purposes of liability under § 1983.  See Pennsylvania v. Bd. of Dirs. of City Trusts of Philadelphia, 323 U.S. 230, 230-31 (1956).

intentional infliction of emotional distress and its definition in § 46 of the Restatement (Second) of Torts, the Supreme Court of Pennsylvania has recognized § 46 as articulating the minimum requirements of the tort." Televandos v. Vacation Charters, Ltd., 264 F. App'x 190, 192 (3d Cir. 2008) (citing Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000)). Section 46 defines the tort of intentional infliction of emotional distress as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Section 46 further provides as follows:

> (2)    Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> (a)    to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm; or
>
> (b)    to any other person who is present at the time, if such distress results in bodily harm.

Restatement (Second) of Torts § 46(2). Accordingly, to state a claim for intentional infliction of emotional distress against a defendant whose conduct was directed at a member of the plaintiff's immediate family, "the family member, who claims emotional distress, [must] have been 'present at the time' when the extreme and outrageous conduct occurred." Taylor, 754 A.2d at 652. Indeed, "presence at the scene of the conduct is an 'essential element which must be established.'" Boria v. Bowers, Civ. A. No. 06-4384, 2009 WL 902421, at *19 (E.D. Pa. Mar. 31, 2009) (quoting Taylor, 754 A.2d at 653). Here, the Complaint does not allege that C.S. was present when any of the

14

conduct complained of occurred.[6]   Therefore, we conclude that the Complaint does not state an intentional infliction of emotional distress claim upon which relief may be granted.  Accordingly, we grant the Motion to Dismiss insofar as it seeks dismissal of C.S.'s claim for intentional infliction of emotional distress pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

b.      Negligent Infliction of Emotional Distress

In Pennsylvania, a plaintiff may bring a claim for negligent infliction of emotional distress in four factual scenarios:

> (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.

Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008) (citation omitted). Accordingly, in order to state a claim for negligent infliction of emotional distress against a defendant whose conduct was directed at a third person, a plaintiff must allege that he or she "observed" the injury.  Toney, 961 A.2d at 198.  As we mentioned earlier, the Complaint makes no such allegation.  Therefore, we conclude that the Complaint does not state a negligent infliction of emotional distress claim upon which relief may be granted.  Accordingly, we grant the Motion to Dismiss insofar as it seeks dismissal of C.S.'s claim for negligent infliction of emotional distress pursuant to Federal Rule of Civil Procedure 12(b)(6).

In sum, we conclude that the Complaint does not state a claim for infliction of emotional distress upon which relief may be granted, and we grant the Board's Motion to dismiss Count Two

---

[6]At the Hearing, Plaintiffs conceded that C.S. was not present for and did not observe any of the conduct complained of.  (See 7/19/11 Hr'g Tr. at 23.)

pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IV.     CONCLUSION**

For the reasons stated above, the Board's Motion is withdrawn in part, denied in part, and granted in part.  The Board withdrew its Motion insofar as it seeks dismissal of Count One pursuant to Federal Rule of Civil Procedure 12(b)(1).  We deny the Board's Motion insofar as it seeks dismissal of Count One pursuant to Federal Rule of Civil Procedure 12(b)(6), and we conclude that Plaintiff may proceed to discovery on Count One under a "state-created danger" theory only.  We deny the Board's Motion insofar as it seeks dismissal of Count Two pursuant to Federal Rule of Civil Procedure 12(b)(1), but we grant the Board's Motion insofar as it seeks dismissal of Count Two Pursuant to Federal Rule of Civil Procedure 12(b)(6).

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova